IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER W. POPICHAK, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 23-CV-3678 |
| : | |
| ANGELE PEURIFOY, *et al.*, : | |
|     Defendants. : | |

**MEMORANDUM**

YOUNGE, J.                                                                                                OCTOBER 16th, 2023

    Plaintiff Christopher Popichak, a prisoner currently incarcerated at SCI Chester, filed this civil action pursuant to 42 U.S.C. § 1983.  Popichak alleges that he was detained beyond the expiration date of his sentence at Chester County Prison.  Popichak seeks to proceed *in forma pauperis*.  For the following reasons, the Court will grant Popichak leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.        FACTUAL ALLEGATIONS

    Popichak's Complaint names ten Defendants:  (1) Angele Peurifoy, a supervisor at the Pennsylvania Board of Probation and Parole (the "Parole Board"); (2) Whitney Landis, his Parole Board agent; (3) Jeffrey Zabawa, his former Parole Board agent; (4) Judge Patrick Carmody of the Chester County Court of Common Pleas; (5) Carlos Barazza and (6) Anastasia Baranowski, both "District Attorneys of Chester County"; (7) Samuel Stretton, and (8) Stuart Crichten, both criminal defense attorneys for Popichak; (9) the Chester County Sheriff's Office; and (10) ABC Bail Bonds.  (Compl. at 2-5.)  Peurifoy is named in her individual capacity only,

Zabawa and Landis are named in their official capacities only, and Judge Carmody is named in both his official and individual capacities. (*Id.*)

As the factual basis for his claims, Popichak alleges that he maxed out his state parole sentence on September 15, 2021 but was improperly denied release from detainment. (*Id.* at 6.) The public record reflects that more than a year prior to that, on July 29, 2020, a criminal complaint was filed charging Popichak with burglary.[1] *See Commonwealth v. Popichak*, MJ-15301-CR-0000158-2020 (MDJ Chester). When the criminal complaint was filed, Popichak was on parole for a prior burglary conviction.[2] *See Commonwealth v. Popichak*, No. 2387 EDA 2021, 2023 WL 4249515, at *9 (Pa. Super. Ct. June 29, 2023). Popichak entered an open plea agreement on the 2020 burglary charge on August 25, 2021. (Compl. at 8); *see also Commonwealth v. Popichak*, CP-15-CR-0002162-2020 (CP Chester); *Popichak*, 2023 WL 4249515, at *2. When he pled guilty, a state parole detainer was lodged against him. (Compl. at 7.) Popichak alleges that he maxed out his state sentence for the prior burglary conviction on September 15, 2021, and should have been released on that date. (*Id.* at 6-7.) He was sentenced on October 22, 2021 to a term of six to fifteen years of incarceration for the 2020 burglary charge. (Compl. at 19); *Popichak*, CP-15-CR-0002162-2020.

Popichak alleges that on September 15, 2021, the day he anticipated being released, he was transported from the Chester County Prison, where he had been housed, to the Chester County Courthouse and provided "Conditions of Bail," which were signed by Defendant Judge Carmody. (Compl. at 6-7.) Popichak further alleges that his grandmother paid the requisite ten

---

[1] Popichak was arrested on the burglary charge on July 30, 2020. (Compl. at 11.)

[2] Popichak was released on parole from his former burglary conviction on June 10, 2019. (Compl. at 11.)

percent of his bail amount ($10,000) to Defendant ABC Bail Bonds. (*Id*. at 6.) Both Popichak's grandmother and his attorney, Defendant Stretton, allegedly made many attempts to contact the Parole Board to facilitate Popichak's release. (*Id*. at 6-7.) His grandmother left telephone messages for Popichak's parole agent, Defendant Zabawa, but Zabawa did not return her calls. (*Id*. at 6.) Stretton allegedly spoke with Defendant Peurifoy and explained to her that Popichak maxed out his state sentence, posted his bond, and thus should be released. (*Id*.) Peurifoy informed Stretton that Zabawa was no longer Popichak's parole agent, that Defendant Landis was now Popichak's parole agent, and that Peurifoy "didn't know how she was going to proceed with [Popichak's] case" but that she "would let [Stretton] know by the end of the business day [on September 15, 2021]." (*Id*. at 6.) She never did. (*Id*.)

Popichak states that after spending the entire day of September 15, 2021 in the holding cell waiting for his release, he was advised that he would not be released due to an open state parole detainer lodged against him as a result of his plea. (*Id*. at 7.) Popichak was then allegedly transported back to Chester County Prison. (*Id*.) On October 6, 2021, Popichak was "transported to SCI-Smithfield as a parole violator." (*Id*.) Popichak alleges that Stretton filed a petition for his immediate release but that Judge Carmody "push[ed] back that petition until [Popichak's] sentencing date," which "showed extreme bias and disregard for [Popichak's] due process and constitutional rights." (*Id*. at 7, 9.) Popichak alleges that he was entitled to a detention hearing within 120 days of initially being detained on July 20, 2020, but was never provided one until fourteen months after his arrest. (*Id*. at 9.)

Popichak further alleges that he was subsequently transported to SCI Chester in December of 2021. (*Id*. at 9.) While there, he contacted his Parole Board Supervisor Agent James to request a "revocation/full panel hearing," which he alleges was denied. (*Id*. at 8, 9.)

Popichak alleges that it was not until he petitioned the Harrisburg Parole Office that a full panel revocation hearing was scheduled for and held on December 28, 2021. (*Id*. at 8, 11.) Popichak states that during this revocation hearing, he learned that the Parole Board was "falsely" advised that Popichak "took a new conviction on [August 25, 2021]," when Popichak instead merely signed an open plea agreement. (*Id*. at 8.) Popichak contends that he signed the open plea agreement "merely to buy time" to retain new legal counsel and fire his former counsel, Defendant Crichton, and because he thought that the plea agreement provided 14 days to retract the plea. (*Id*. at 8.)

Based on these allegations, Popichak asserts claims for a due process violation, "illegal imprisonment," and "wrongful over detention." (*Id*. at 10, 18.) Popichak alleges that the denial of his revocation hearing for "nine months past the expiration of the [120-day] window" and the denial of his release – even if only for the five weeks between when he maxed out his state sentence and when he was sentenced on the 2020 burglary – has caused him to suffer poor health, heart problems, panic attacks, PTSD, and strained relationships. (*Id*. at 10, 17.) For relief, he seeks money damages and "parole on [his] minimum date."³ (*Id*. at 17.)

---

³ The Court has no authority to grant parole to a state inmate as relief for a § 1983 claim. *See Adams v. Wahl*, No. 22-0495, 2022 WL 2310210, at *2 (M.D. Pa. June 27, 2022) ("The role of a federal court is confined to reviewing the substance of the state parole decision to determine whether the Parole Board exercised its authority in an arbitrary and capricious, or constitutionally impermissible manner." (citing *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980)); *see also Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (stating that when the relief a prisoner seeks "is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."). Accordingly, Popichak's request that the Court to grant him parole on his minimum date is denied.

## II.     STANDARD OF REVIEW

The Court grants Popichak leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Section 1915 also requires the dismissal of claims for monetary relief brought against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *Rauso v. Giambrone*, 782 F. App'x 99, 101 (3d Cir. 2019) (*per curium*) (holding that § 1915(e)(2)(B)(iii) "explicitly states that a court shall dismiss a case 'at any time' where the action seeks monetary relief against a defendant who is immune from such relief").  As Popichak is proceeding *pro se*,

---

[4] However, Popichak will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III. DISCUSSION

Popichak raises constitutional claims pursuant to § 1983 based on his alleged detention beyond the date he maxed out his prior state sentence for burglary. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Iqbal*, 556 U.S. at 676 (explaining that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). For the following reasons, Popichak fails to state a plausible claim against any Defendant.

#### A. Official Capacity Claims

Popichak names Defendants Zabawa and Landis in their official capacities only. Claims against state or local officials named in their official capacity are indistinguishable from claims against the governmental entity that employs them. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. Thus, § 1983 claims against Zabawa and

Landis – who appear to be employed by the Pennsylvania Board of Probation and Parole – are really claims against the Commonwealth of Pennsylvania, which is shielded from § 1983 suits by Eleventh Amendment immunity. *See Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) ("As an arm of the State, an individual judicial district and its probation and parole department are entitled to Eleventh Amendment immunity."). States are also not "persons" subject to liability under § 1983. *Will v. Michigan State Police*, 491 U.S. 58, 70 (1989).

Since Popichak appears to not have understood the implication of naming Zabawa and Landis in their official capacities only, and because the Complaint seeks money damages for the Defendants' actions, the Court will liberally construe the Complaint to assert claims against Zabawa and Landis in their individual capacities.[5] *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (quotations omitted)); *Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed event though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

The official capacity claim against Judge Carmody must also be dismissed. Any official capacity claims against Judge Carmody are really claims brought against the Commonwealth of Pennsylvania because Judges of the Court of Common Pleas are considered officials of the Commonwealth. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005).

---

[5] However, as explained further below, *see Infra* § III.G, the claims asserted against Zabawa and Landis in their individual capacities will also be dismissed.

Pennsylvania's courts are arms of the Commonwealth that share in the Commonwealth's Eleventh Amendment immunity, and, as such, are not considered "persons" subject to liability under § 1983. *See Karns v. Shanahan*, 879 F.3d 504, 519 (3d Cir. 2018) (citing *Will*, 491 U.S. at 70 ); *Benn*, 426 F.3d at 241 (holding that Pennsylvania's Judicial Districts are entitled to immunity from suit under the Eleventh Amendment); *Gannaway v. Stroumbakis*, 842 F. App'x 725, 729 (3d Cir. 2021) (affirming district court's conclusion that trial judge was entitled to Eleventh Amendment immunity from suit in his official capacity).

To the extent that Popichak also named the two prosecuting attorneys – Barazza and Baranowski – in their official capacity, such claims will also be dismissed. An official capacity claim against the prosecuting attorneys are actually claims against the Chester County District Attorney's Office. *See Graham*, 473 U.S. at 165-66. Any official capacity claim against the prosecutor attorneys is not plausible because district attorney's offices in Pennsylvania are not entities subject to suit under § 1983. *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) (holding that "the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability").

**B.     Individual Capacity Claims against Judge Carmody**

Popichak's individual capacity claims against Judge Carmody are barred by absolute judicial immunity. Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). "A judge will not be deprived of immunity because the

action he took was in error, was done maliciously, or was in excess of his authority." *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009) (citations omitted). Moreover, "[i]mmunity will not be forfeited because a judge has committed 'grave procedural errors,' or because a judge has conducted a proceeding in an 'informal and ex parte' manner', . . . [or] because the judge's action is 'unfair' or controversial." *Gallas*, 211 F.3d at 769 (citations omitted). A judge will be subject to liability only "when he has acted 'in the clear absence of all jurisdiction.'" *Id*. (quoting *Stump*, 435 U.S. at 356-57). "Generally, . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

Popichak's claims against Judge Carmody appear to arise solely from allegations about Judge Carmody's actions while presiding over Popichak's criminal case. In particular, Popichak alleges that Judge Carmody failed to release him after he maxed out his state court sentence and failed to consider his petition for release until the time of his sentencing. All of the Complaint's allegations about Judge Carmody concern acts that he took in his judicial capacity. Also, there are no allegations suggesting that Judge Carmody acted in the absence of all jurisdiction to negate judicial immunity. Accordingly, the claims against Judge Carmody must be dismissed. *See Kinnard v. George*, 652 F. App'x 96, 98 (3d Cir. 2016) (finding § 1983 action by a *pro se* plaintiff against two state court judges was properly dismissed where plaintiff complained of "judicial actions that [the] Judges . . . took in the course of an official criminal proceeding" because the judges were "protected by absolute judicial immunity").

    **C.**    **Individual Capacity Claims Against Assistant District Attorneys**

Popichak names Barazza and Baranowski, two Assistant District Attorneys, as

Defendants. However, Popichak does not allege any facts specific as to these Defendants' involvement in his alleged constitutional harm. *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."). In any event prosecutors are entitled to absolute immunity from damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). District Attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009). To the extent that Popichak bases his claims on allegations that the prosecuting defendants were involved in placing a detainer on him or recommending that bail be denied or revoked, these acts are also entitled to absolute immunity. *See Giallorenzo v. Beaver Cnty.*, No 06-0354, 2006 WL 3145126, at *6 (W.D. Pa. Oct. 31, 2006), *aff'd*, 241 F. App'x 866 (3d Cir. 2007) (dismissing claims against assistant district attorney based on attorney's recommendation that bail be removed and that a detainer be filed against the plaintiff); *Cross v. Meisel*, 720 F. Supp. 486, 489 (E.D. Pa. 1989) ("While [the district attorney] did lodge the detainer that [the plaintiff] alleges was granted without a hearing, this action falls within his *Imbler* absolute immunity."). Accordingly, there is no plausible basis for claims against Barazza and Baranowski based on matters related to Popichak's prosecution.

### D. Claims against Criminal Defense Attorneys

Popichak also names as Defendants his two criminal defense attorneys: Stretton and Crichton. Since Popichak alleges no specific facts about Crichton's involvement in the events giving rise to his claims, they must be dismissed on this basis. *See Rode*, 845 F.2d at 1207.

With regard to Stretton, Popichak alleges that he advocated for Popichak's release after maxing out his state court sentence, including filing a petition for release, and contacted the Parole Board and Judge Carmody in these efforts. While it is unclear whether Stretton and Crichton were public defenders, privately retained defense attorneys, or court-appointed defense attorneys, Popichak asserts that they represented him as his defense counsel. Neither Defendant can thus be held liable under § 1983 since defense attorneys are not state actors "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (footnote omitted); *Clark v. Punshon*, 516 F. App' x 97, 99 (3d Cir. 2013) (*per curiam*) (noting that a court-appointed attorney is not a state actor for purposes of § 1983); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."); *see also Gannaway*, 842 F. App'x at 730 (affirming dismissal of claims against private and court-appointed criminal defense attorneys as they were not state actors for purposes of § 1983). The allegations about Stretton and Crichton are limited to their roles as Popichak's criminal defense attorneys. Accordingly, Stretton and Crichton are not "persons" liable under § 1983, and Popichak's constitutional claims against them must be dismissed.

    E.  **Claims Against Chester County Sheriff's Office**

Popichak also names the Chester County Sheriff's Office as a Defendant. Claims against a county Sheriff's Department are treated as claims against the county itself. *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n. 4 (3d Cir. 1997). This is because "Pennsylvania county offices . . . are treated as municipalities for purposes of *Monell*." *Hatfield v. Berube*, 714 F. App'x. 99, 102 n.1 (3d Cir. 2017) (citing *Mulholland v. Gov't Cnty. of Berks*, Pa.,706 F.3d 227,

237 (3d Cir. 2013)). To state a plausible claim against a county under § 1983, a plaintiff must allege that the county's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id*. (internal quotations and alterations omitted). Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a plausible claim. *See, e.g., Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) (citing cases).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently

cause deprivation of constitutional rights." *Id*.

Popichak does not allege that a policy or custom of Chester County caused a violation of his constitutional rights. Accordingly, the Court will dismiss all claims against the Chester County Sheriff's Office because the claims are not plausible.

### F.     Claims Against ABC Bail Bonds

Popichak also names ABC Bail Bonds as a Defendant and alleges only that it received ten percent of his bail amount from his grandmother. Whether a private entity is acting under color of state law – i.e., whether the defendant is a state actor subject to liability under § 1983 – depends on whether there is " such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

Under this test,"[g]enerally, courts have held that bail bondsmen are not state actors, noting that the acts of receiving bail money and applying it to the bond of a prisoner are not traditional government actions but rather, those of a private citizen or corporation." *Steward v. A.A. Bails Bondsman Agency*, No. 14-1214, 2014 WL 4824481, at *3 (D.N.J. Sept. 25, 2014) (citing cases); *Hester v. Allentown Police Dep't*, No. 13-4249, 2013 WL 4482453, at *2 (E.D.

Pa. Aug. 21, 2013) (concluding that a bail bonds company was not a state actor); *Martinez/Goddard v. Banono*, No. 87-2858, 1987 WL 11931, at *1 (E.D. Pa. June 2, 1987) (dismissing complaint pursuant to 28 U.S.C. § 1915 where plaintiff failed to allege any facts showing that bail bondsman was a state actor). "[B]ail bondsman have been held to be state actors in certain discrete factual contexts, such as when making arrests with the assistance of law enforcement officers or acting in concert with police action." *Steward*, 2014 WL 4824481, at *3 (citing cases); *Jacobs v. A Robert Depersia Agency*, No. 09-0180, 2009 WL 799944, at *2 (D.N.J. Mar. 20, 2009) ("The few exceptions were limited to the cases where bondsmen, acting jointly with police, exercised excessive force during arrests or caused property damage and personal injury upon forcible entry of dwellings: in such cases, the activities of bondsmen were deemed so closely intertwined with those of police officers whom these bondsmen joined, that State action was deemed present.").

Popichak alleges no facts to suggest that ABC Bail Bonds was a state actor. The sole allegation in the Complaint as to ABC Bail Bonds is that it received the bail money from Popichak's grandmother. This is the commonly understood private action of a bail bondsman and does not render ABC Bail Bonds a state actor for purposes of Popichak's § 1983 claims. S*ee Steward*, 2014 WL 4824481, at *3 (dismissing claim against bail bondsman agency where it "simply provided Plaintiff with an initial bail bond" and thus "cannot be qualified as a state actor").

### G.      Individual Capacity Claims against Parole Board Defendants

Popichak also asserts individual capacity claims against Parole Board Defendants Peurifoy, Landis, and Zabawa. Zabawa's involvement in the alleged harm is unclear. Popichak alleges only that Zabawa was his former parole agent who never returned his grandmother's

telephone calls.  With regard to Peurifoy and Landis, Popichak alleges that they violated his due process rights by failing to timely schedule his full panel revocation hearing, which he claims should have been filed within 120 days of his arrest.[6]  The Court understands Popichak to assert a procedural due process claim under the Fourteenth Amendment and a claim based on the alleged violation of his right to be free from cruel and unusual punishment under the Eighth Amendment.  The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and an opportunity to be heard before the government can deprive an individual of a liberty or property interest.  Moreover, "[a]n inmate's detention after his term of imprisonment can, under certain circumstances, constitute cruel and unusual punishment, in violation of the Eighth Amendment."  *Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017); *see also Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993) ("Subjecting a prisoner to detention beyond the termination of his sentence has been held to violate the eighth amendment's proscription against cruel and usual punishment.").

However, probation officers "are entitled to absolute immunity when they are engaged in adjudicatory duties."  *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989).  "In their executive or administrative capacity, probation and parole officers are entitled only to a qualified, good faith immunity."  *Id*. (citing *Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986)).  Adjudicatory acts entitled to absolute immunity are those acts that "integral to the judicial process."  *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006); *see also Thompson v. Burke*, 556 F.2d 231, 237

---

[6] Popichak also alleges that on three occasions he requested a full panel revocation hearing from Parole Board Supervisor Agent James, but that James responded that Popichak should "stop writing" because "she won't afford [him] the hearing." (Compl. at 8, 9.)  James is not named as a Defendant in this action.  Even if she were, however, any claims against her would be dismissed for the same reason the claims are dismissed against the other Parole Board Defendants.  *See infra*.

(3d Cir. 1977); *Sample v. Johnson*, No. 21-1301, 2023 WL 2649458, at *4 (W.D. Pa. Mar. 27, 2023). Examples of adjudicative acts of parole board members include hearing evidence, making recommendations as to whether to parole a prisoner, and making decisions to grant, revoke, or deny parole. *Breslin v. Brainard*, No. 01-7269, 2002 WL 31513425, at *7 n.10 (E.D. Pa. Nov. 1, 2002) (citing *Wilson*, 878 F.2d at 776; *Harper*, 808 F.2d at 284).

Federal district courts in Pennsylvania have concluded that scheduling, failing to timely schedule, and denying a request to schedule a parole revocation hearing are all adjudicatory acts entitling Parole Board defendants to absolute immunity. *See Sample*, 2023 WL 2649458, at *6 (dismissing § 1983 claims against parole board defendants accused of "scheduling and holding an untimely hearing and ignoring [the plaintiff's] arguments regarding timeliness of that hearing" because "these functions were 'part and parcel of considering whether' to revoke his parole, and 'thus are judicial acts entitled to absolute immunity.'") (quoting *Simon v. Ward*, No. 00-1554, 2001 WL 41127, at *3 (E.D. Pa. Jan. 16, 2001)); *Simon*, 2001 WL 41127, at *3 (concluding that the failure to grant a hearing is "is part and parcel of considering whether to grant or deny parole, and thus is a judicial act entitled to absolute immunity"); *Razzoli v. Sec'y of Navy*, No. 06-1833, 2008 WL 906441 at *7 (M.D. Pa. Mar. 31, 2008) (noting that "[a]bsolute immunity has also been found to apply with regard to the scheduling of parole revocation proceedings, as the proceedings are an integral part of the revocation decision itself, and functionally comparable to the decisions of a judge concerning the scheduling of a trial") (citing *Walrath v. United States*, 35 F.3d 277, 283 (7th Cir. 1994)). Here, the only allegations that Popichak makes against the Parole Board Defendants are that, despite his repeated requests, they failed to timely schedule a full panel revocation hearing. These are adjudicatory acts. The Parole Board Defendants are thus entitled to absolute immunity.

Even if the Parole Board Defendants were not absolutely immune, however, Popichak's claims against them would nevertheless be dismissed. First, his December 28, 2021 revocation hearing was not untimely. Pennsylvania law provides that "[a] revocation hearing shall be held within 120 days from the date the Board received official *verification of the plea of guilty* or nolo contendere or of the guilty verdict." 37 Pa. Code § 71.4(1) (emphasis added). An exception to this requirement is that:

> If a parolee is confined outside of the jurisdiction of the Department of Corrections, such as . . . confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.3d 842 (1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.

*Id*. at § 71.4(1)(i).

Popichak entered an open plea agreement on August 25, 2021. Had Popichak been in state custody, the 120-day clock would start on this date. *See id*. However, Popichak was not in state custody; he was in the custody of Chester County. Popichak was not transferred to a state correctional facility until October 6, 2021, when he was transported to SCI-Smithfield as a parole violator. (*See* Compl. at 7.) Popichak's revocation hearing was held on December 21, 2021, which was 76 days after he was transferred to state custody. Accordingly, his revocation hearing was timely and any due process claim based on the alleged untimeliness of the hearing is not plausible.[7] *See Beto v. Barkley*, 706 F. App'x 761, 767 (3d Cir. 2017) (concluding that the plaintiff failed to state a procedural due process claim based on allegations that he received an untimely parole revocation hearing where the hearing was held within 120 days after the plaintiff's return to state custody from federal custody).

---

[7] From Popichak's allegations, it is clear he did not waive the right to a revocation hearing.

Second, any Eighth Amendment claim based on alleged unlawful over detainment fails because the Parole Board had the authority to detain Popichak beyond the termination of his prior state court sentence in light of Popichak committing a crime while on parole. Pennsylvania law provides that if a parolee, "during the period of parole . . . commits a crime punishable by imprisonment, for which the parolee is convicted or found guilty by a judge or jury *or to which the parolee pleads guilty* or nolo contendere at any time thereafter in a court of record," the Board has discretion to "revoke the parole of the paroled offender." 61 Pa. Cons. Stat. § 6138(a)(1). Pennsylvania state courts interpret this statute "to mean that the Board retains jurisdiction over the parolee beyond the expiration of the maximum sentence (referring to the original conviction) so long as the crime that leads to the second conviction occurred while the parolee was on parole for the original conviction." *Beto*, 706 F. App'x at 768; *see also Miskovitch v. Pennsylvania Bd. of Prob. & Parole*, 77 A.3d 66, 73 (Pa. Commw. Ct. 2013) ("It is well-settled law that the Board retains jurisdiction to recommit an individual as a parole violator after the expiration of the maximum term, so long as the crimes that lead to the conviction occurred while the individual is on parole."); *United States v. Long-Parham*, 183 F. Supp. 3d 746, 749 (W.D. Pa. 2016) (stating that "the Board is authorized to recommit a parolee who commits a crime punishable by imprisonment while he is on parole and is later found guilty by a judge or a jury or to which he later pleads guilty") (citing cases).

When Popichak maxed out his state court sentence on September 15, 2021, he had already pled guilty to another burglary charge. Thus, the Parole Board had the authority to recommit him even though he maxed out his prior state sentence. Accordingly, any Eighth Amendment claim based on unlawful or over detainment must be dismissed. *See Beto*, 706 F. App'x at 768 (dismissing Eighth Amendment unlawful detainment claim against parole board

defendants where the plaintiff was detained after he maxed out his state court sentence until his parole revocation hearing occurred).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Popichak leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The dismissal will be with prejudice because the Court concludes that amendment would be futile. An appropriate Order follows.

**BY THE COURT:**

**/s/ John Milton Younge**
**JOHN MILTON YOUNGE, J.**